Filed 2/9/26  City of Industry v. Superior Court CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| CITY OF INDUSTRY,<br><br>      Petitioner,<br><br> v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>      Respondent;<br><br>NATHAN J. HOCHMAN et al.,<br><br>  Real Parties in Interest. | B334917<br><br><br>(Los Angeles County Super. Ct. No. BA498005) |

ORIGINAL PROCEEDINGS in mandate.  Ronald S. Coen, Judge.  Petition granted in part; peremptory writ of mandate issued; remanded with directions.

Andrues/Podberesky, Mary Carter Andrues, Vicki I. Podberesky, and Dillon Milar for Petitioner.

No appearance for Respondent.

Nathan J. Hochman, District Attorney, Cassandra Thorp and Byron Beck, Deputy District Attorneys for Real Parties in

Interest Nathan J. Hochman and the Los Angeles County District Attorney's Office.

No appearance for Real Party in Interest Paul Jule Philips.

\* \* \* \* \* \* \* \* \* \*

Criminal charges were filed against four individuals alleging they participated in a scheme to defraud monies from petitioner City of Industry (City) with respect to the purchase and development of land for a solar project (the Tres Hermanos solar project). During the preliminary hearing for defendant Paul Jule Philips, the City's former manager, the City objected to evidence and testimony from numerous City-affiliated witnesses based on the attorney-client privilege and the closed session privilege embodied in the Ralph M. Brown Act (Gov. Code, § 54950 et seq.; the Brown Act). The objections were sustained, and the City represented it would be asserting the same objections at trial.

Philips, after being held to answer on one count of misappropriation of public funds (Pen. Code, §424, subd. (a)), filed a motion under Evidence Code section 402. He requested an order excluding the prosecution from offering any of the witnesses whose testimony was limited by the assertion of the City's privileges, or alternatively, an order dismissing the felony complaint based on the denial of his constitutional rights to due process, to present a defense, and to confront the witnesses against him. The prosecution opposed.

The trial court denied Philips's requests for an order precluding witnesses or dismissing the felony complaint. Instead, the court found that both privileges asserted by the City

2

were conditional and subject to the balancing test set forth in *Delaney v. Superior Court* (1990) 50 Cal.3d 785 (*Delaney*). The court said the privileges must yield to Philips's constitutional rights to a fair trial, that the privileges "would not be upheld" at trial, and that it would impose "the sanction of coercive contempt" for any trial witness who asserted either privilege "until that person decide[d] to testify."

The City filed this petition for a writ of mandamus directing the superior court to vacate its order and issue a new order upholding its privileges as absolute. Real parties in interest Nathan J. Hochman and the Los Angeles County District Attorney's Office (the People) filed opposition. After we issued an alternative writ and an order to show cause, the trial court declined to vacate its order.

We conclude the trial court erred in relying on *Delaney* and in issuing a blanket ruling that neither the attorney-client privilege nor the closed session privilege for official information in the Brown Act apply at trial as to any witness. We further find the factual record is insufficiently developed to determine the validity of the assertion of either privilege, or any exception to either privilege, for any of the proposed trial witnesses. We therefore grant the petition in part and issue a peremptory writ of mandate to the superior court commanding it (1) to vacate its order set forth in the amended June 23, 2023 reporter's transcript together with the corrections articulated at the December 7, 2023 hearing, insofar as that order finds the attorney-client privilege and closed session privilege in the Brown Act to be conditional privileges, and insofar as the order directs that neither privilege will apply at trial as to any witness; and (2) to conduct further proceedings consistent with this

3

opinion to determine the validity and applicability of the privileges, and any applicable exceptions.

## FACTUAL AND PROCEDURAL BACKGROUND

This writ proceeding arises from an underlying criminal case titled *People v. Barkett et al.* (Super. Ct. Los Angeles County, No. BA498005). After executing a search warrant at the City in August 2020, the People charged Philips and three other individuals with multiple felonies arising from the alleged mishandling of public funds related to the Tres Hermanos solar project. Philips was the City's manager from June 2015 through his termination in February 2018. The other defendants are William Joseph Barkett, a private real estate developer, Frank Hill, a private consultant for the City, and Anthony Stewart Bouza, a real estate attorney. The People allege that defendants participated in a fraudulent, self-dealing scheme to induce the City to buy land for the development of a solar facility. Most of the operative conduct is alleged to have occurred between 2016 and 2018.

The preliminary hearing for Philips took place over a period of months, concluding on October 4, 2022. The preliminary hearings for the other three defendants were scheduled to take place separately in 2024. According to the People's supplemental brief in this court, those hearings have not yet proceeded.

During the preliminary hearing, the People called seven witnesses affiliated with the City: James Casso and Bianca Sparks Rojas, principals in the law firm of Casso & Sparks who serve, respectively, as City Attorney and Assistant City Attorney; Alejandro Gonzalez, former director of administrative services for the City; Susan Paragas, former director of finance for the City;

4

Newell Ruggles, current council member for the City; Yamini Pathak, current director of finance for the City; and Julie Gutierrez-Robles, current City clerk.

The City objected to the testimony of these seven witnesses based on the attorney-client privilege and the closed session privilege of the Brown Act. The City also asserted the attorney work product privilege but that privilege has not been raised in this proceeding. The court concluded the City's privileges were absolute and sustained the objections. In addition, following an in camera hearing on August 25, 2022, the court ordered that Philips could not testify in his own defense as to any discussions he had during closed sessions under the Brown Act.

At the conclusion of the preliminary hearing, the court denied Philips's motion to dismiss for insufficient evidence and held him to answer on count 1 (Pen. Code, § 424, subd. (a)).

Philips then sought a pretrial order under Evidence Code section 402 excluding certain witnesses from testifying at trial or alternatively, for a dismissal of the charges. Philips contended the City's invocation of the attorney-client privilege and the closed session privilege of the Brown Act would deprive him of the right to a fair trial, a right to fully and effectively cross-examine the witnesses against him, and to present material, exonerating evidence in his own defense. The prosecution opposed the motion to the extent it sought a dismissal of the felony complaint or an order precluding any of its trial witnesses, but agreed with Philips that the court's order elevating the City's assertion of evidentiary privileges over his constitutionally protected trial rights was error.

On June 23, 2023, after entertaining argument, the trial court issued an oral ruling. The court denied Philips's request for

5

an order precluding witnesses or dismissing the charges. The court instead found that both the attorney-client privilege and the closed session privilege of the Brown Act asserted by the City were qualified and subject to a balancing test under *Delaney*, *supra*, 50 Cal.3d 785. The court said, "I have to do the balancing test in terms of understanding whether the privilege should apply or not apply." The court further explained, "In utilizing the *Delaney* test in this matter . . . I find that as to the information that the defendant is requiring for a fair trial, there is no alternative. There is no other way to get this evidence, including the defendant's own testimony, which he couldn't do if the privileges were upheld. . . . [¶] Consequently, in balancing the items, I find that the privilege in this matter must give way to the defendant's right under the Sixth Amendment, to a fair trial. And that is the holding, that the privileges would not be upheld, and that the witnesses who tried to claim such privileges, absent anything further, must be compelled to testify." The court also emphasized its ruling applied only to trial testimony, and not to any pretrial discovery or the procedures specified in the protective order related to the documents seized pursuant to the August 2020 search warrant. The court said it would impose "the sanction of coercive contempt" for any trial witness who asserted either privilege "until that person decide[d] to testify."

Because of various defects in the reporter's transcript of the hearing, the order was not final until the court articulated amendments at a hearing on December 7, 2023.

The City filed this writ petition seeking a writ of mandate compelling the superior court to vacate its order and to issue a new order recognizing the attorney-client privilege and the closed

6

session privilege of the Brown Act as absolute privileges and not subject to any balancing test.

On September 22, 2025, we issued an alternative writ directing the superior court to vacate its order or show cause why a peremptory writ of mandate should not issue. In response, the trial court issued a minute order stating it was "of the opinion that an appellate ruling is essential to this case in particular and the law of privileges in general. As such, the court declines to vacate its order." The City and the People filed supplemental briefs in this court.

**DISCUSSION**

**1. Attorney-Client Privilege**

The trial court's order improperly relies on *Delaney*, *supra*, 50 Cal.3d 785 to conclude the City's attorney-client privilege is qualified and must yield to Philips's trial rights. It is well-settled the attorney-client privilege is an absolute privilege " 'and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case.' " (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 732 (*Costco*).)

Our Supreme Court has explained that, given the absolute nature of the attorney-client privilege, it "can take precedence even over a criminal defendant's trial rights. Thus, it is settled that 'a criminal defendant's right to due process does not entitle him to invade the attorney-client privilege of another.' [Citations.] Nor does the withholding of material protected by the attorney-client privilege violate a criminal defendant's right to confrontation." (*People v. Bell* (2019) 7 Cal.5th 70, 96–97 (*Bell*); accord, *People v. Gurule* (2002) 28 Cal.4th 557, 594; *People*

7

*v. Johnson* (1989) 47 Cal.3d 1194, 1228, overruled in part on other grounds in *People v. Gutierrez* (2017) 2 Cal.5th 1150, 1174.)

This is so because the attorney-client privilege has a venerable pedigree. It is "one of the oldest recognized privileges for confidential communications." (*Swidler & Berlin v. United States* (1998) 524 U.S. 399, 403.) Long enshrined in both state and federal law, the privilege has been " 'a hallmark of Anglo-American jurisprudence for almost 400 years.' " (*Costco, supra,* 47 Cal.4th at p. 732.) The privilege "is no mere peripheral evidentiary rule, but is held vital to the effective administration of justice." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 380 (*Roberts*).) Given this well-settled authority, we reject the trial court's use of the *Delaney* balancing test, effectively treating the City's privilege as qualified and ruling the privilege may not be asserted at trial as to any witness.

We also reject the People's argument we should treat the City's assertion of the attorney-client privilege as conditional simply because it is a public entity. Under our statutory scheme, public entities are deemed "person[s]" entitled to assert the attorney-client privilege. (*Roberts, supra,* 5 Cal.4th at p. 370; see also Evid. Code, §§ 175, 951, 954.) *Roberts* explains, "[a] city council needs freedom to confer with its lawyers confidentially in order to obtain adequate advice, just as does a private citizen who seeks legal counsel, even though the scope of confidential meetings is limited by this state's public meeting requirements. [Citations.] The public interest is served by the privilege because it permits local government agencies to seek advice that may prevent the agency from becoming embroiled in litigation, and it may permit the agency to avoid unnecessary controversy with various members of the public." (*Roberts,* at pp. 380–381.)

8

We acknowledge the People's argument that, unlike private individuals invoking the protection of the attorney-client privilege, government lawyers and public officials have a duty to act in the public interest and they should not be allowed to assert the privilege to thwart the lawful administration of justice.

However, the People have not provided any persuasive authority that this court may use that public policy rationale as a basis for engrafting implied exceptions onto the attorney-client privilege or for otherwise concluding that public entities have only a qualified or conditional privilege for confidential communications with their lawyers. Indeed, our Supreme Court has said otherwise. "[T]he Legislature has determined that evidentiary privileges shall be available only as defined by statute" and courts may not narrow or imply unwritten exceptions onto existing statutory privileges. (*Roberts*, *supra*, 5 Cal.4th at p. 373; see also Evid. Code, § 911.)

Our finding the attorney-client privilege is absolute does not end the analysis however. As both parties conceded at oral argument, the factual record is not sufficiently developed for us to resolve whether the City's assertion of the attorney-client privilege is valid in all instances as to each of the proposed trial witnesses. Moreover, given the scope of possible testimony and number of witnesses for which the City contends the privilege applies, such a fact-intensive inquiry is best resolved in the trial court.

On remand, the trial court must conduct further proceedings as are necessary to allow the City to lay the proper foundation for the assertion of the privilege, and for the People and/or Philips to demonstrate that the privilege does not apply or that a statutory exception exists.

*Costco* instructs that the party claiming the attorney-client privilege "has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship. [Citation.] Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." (*Costco*, *supra*, 47 Cal.4th at p. 733; see also Evid. Code, § 917.)

In resolving whether there is a valid assertion of the attorney-client privilege, the trial court may conduct an in camera hearing but must be mindful there is a "critical distinction between holding a hearing to determine the validity of a claim of privilege and requiring disclosure at the hearing of the very communication claimed to be privileged." (*Costco*, *supra*, 47 Cal.4th at p. 737; see also Evid. Code, § 915.) While Evidence Code section 915 does not preclude the trial court from requiring a litigant to reveal information "to permit the court to evaluate the basis for the claim of privilege [citation], it does not follow that courts are free to ignore the section's prohibition and demand in camera disclosure of the allegedly privileged information itself for this purpose." (*Costco*, at p. 737; accord, *Bell*, *supra*, 7 Cal.5th at pp. 96–97.)

Moreover, knowledge of a witness " ' "which is not otherwise privileged does not become so merely by being communicated to an attorney. [Citation.] Obviously, a client may be examined on deposition or at trial as to the facts of the case, whether or not he has communicated them to his attorney.

10

[Citation.] While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney." ' " (*Costco, supra*, 47 Cal.4th at p. 735; see also *State Farm Fire & Casualty Co. v. Superior Court* (1997) 54 Cal.App.4th 625, 640–642 (*State Farm*).)

If the City demonstrates a proper foundation for the attorney-client privilege, the People and Philips have the right to invoke an exception to the attorney-client privilege. Any party asserting an exception to the privilege bears the burden of demonstrating the basis for the exception. The People contend the crime fraud exception under Evidence Code section 956 is applicable. In order to demonstrate the applicability of the crime fraud exception, the party " 'must make a prima facie showing that the services of the lawyer "were sought or obtained" to enable or to aid anyone to commit or plan to commit a crime or fraud. [Citation.]' " (*State Farm, supra*, 54 Cal.App.4th at p. 643.)

## 2.    The Brown Act – Closed Session Privilege

The trial court's order also fails to treat the closed session privilege embodied in the Brown Act as absolute. The Brown Act provides that "[a] person may not disclose confidential information that has been acquired by being present in a closed session authorized by Section 54956.7, 54956.8, 54956.86, 54956.87, 54956.9, 54957, 54957.6, 54957.8, or 54957.10 to a person not entitled to receive it, unless the legislative body authorizes disclosure of that confidential information." (Gov. Code, § 54963, subd. (a).)

Evidence Code section 1040, subdivision (b)(1), recognizes an absolute privilege where disclosure is forbidden by a "statute

11

of this state." We agree with the analysis in *Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324 that Evidence Code section 1040, subdivision (b)(1), "necessarily includes the Brown Act's prohibition of disclosure of closed session proceedings except as provided by the Act." (*Kleitman*, at p. 335, fn. 9.) The Brown Act makes no provision for disclosure in a criminal trial.

However, once again, as the parties concede, the factual record is insufficiently developed to resolve whether the City's assertion of the closed session privilege under the Brown Act is valid. This fact-intensive inquiry will have to be conducted by the trial court on remand.

"[T]he keystone of the Brown Act is the requirement that '[a]ll meetings of the legislative body of a local agency shall be open and public. . . .'" (*Roberts*, *supra*, 5 Cal.4th at p. 375, quoting Gov. Code, § 54953, subd. (a).) "Statutory exceptions authorizing closed sessions of legislative bodies are construed narrowly and the Brown Act 'sunshine law' is construed liberally in favor of openness in conducting public business." (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 917 (*Shapiro*); see also Cal. Const., art. I, § 3, subd. (b)(2) ["A statute, court rule, or other authority . . . shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access"].)

In the proceedings below, the City raised the closed session provision related to real estate negotiations. (Gov. Code, § 54956.8.) Government Code section 54956.8 has been aptly described as "a narrowly defined exception to the rule of open meetings, for the purpose of giving instructions to the [public entity's] negotiators concerning a particularized and realistically anticipated transaction that the [public entity] may complete,

whether as an individualized transaction or as part of a larger one." (*Shapiro*, *supra*, 96 Cal.App.4th at p. 924.)

According to Government Code section 54956.8, a public entity "may hold a closed session with its negotiator prior to the purchase, sale, exchange, or lease of real property by or for the local agency to grant authority to its negotiator regarding the price and terms of payment for the purchase, sale, exchange, or lease." (*Ibid*.) Prior to holding the closed session, the public entity must "hold an open and public session in which it identifies its negotiators, the real property or real properties which the negotiations may concern, and the person or persons with whom its negotiators may negotiate." (*Ibid*.)

Other provisions of the Brown Act also require that before the public entity holds the closed session, it "must post an agenda containing a 'brief general description of each item of business to be transacted or discussed at the meeting, including items to be discussed in closed session,' and no action or discussion shall be undertaken on any item not appearing on the posted agenda." (*Shapiro*, *supra*, 96 Cal.App.4th at p. 923, quoting Gov. Code, § 54954.2.) Government Code section 54957.7, subdivision (a), requires the public entity to disclose in an open meeting "the item or items to be discussed in the closed session" and that the public entity "may consider only those matters covered in its statement" at the open meeting.

On remand, the trial court shall conduct such further proceedings as are necessary to allow the City to present evidence supporting its invocation of the closed session privilege as to any portion of the testimony of each of the anticipated trial witnesses to whom it contends the privilege applies. In order for a closed session privilege to apply, compliance with all of the statutory

requirements for holding a closed session set forth in the Brown Act must be demonstrated.  Further, it is not entirely clear from the existing record if the City is also purporting to raise the closed session provision for pending litigation (Gov. Code, § 54956.9) as to any trial witness.  The City shall have the opportunity to make the requisite showing separately for that provision if it intends to rely on it.

Given the state of the factual record, it is not clear whether material testimony from any anticipated trial witness will be excluded by a valid exercise of either privilege.  It is therefore premature to consider whether Philips has any ground for claiming an infringement on his trial rights under the federal constitution.  (*Davis v. Alaska* (1974) 415 U.S. 308, 319; *Miller v. Superior Court* (1999) 21 Cal.4th 883, 900–901.)

# DISPOSITION

Let a peremptory writ of mandate issue commanding the superior court (1) to vacate its order set forth in the amended June 23, 2023 reporter's transcript together with the corrections articulated at the December 7, 2023 hearing insofar as that order finds the attorney-client privilege and closed session privilege for official information embodied in the Brown Act to be conditional privileges, and insofar as the order directs that neither privilege will apply at trial as to any witness; and (2) to conduct such further hearings as may be necessary to determine the validity and applicability of the assertion of such privileges, and any exception to such privileges, as to the testimony of each proposed trial witness.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

WILEY, J.

15